The government's brief states that this case is about a tactical litigation choice made by counsel and consented to by Mendoza, about which Mendoza was aware in sufficient time for Mendoza himself to have pursued a timely appeal of his case. What this is about is that two days before the filing of the notice of appeal was due for Mr. Mendoza, his lawyer, Mr. Mamarill, calls him and tells him, instead of filing this notice of appeal, it would be best if we just filed an H-1B employment visa petition for you. And Mr. Mendoza thought, well, if that's the recommendation of counsel, then that's what should be done. Was that a tactical legal choice? What Mr. Mamarill failed to inform Mr. Mendoza was that once the notice of appeal had expired, had lapsed, Mr. Mendoza would then either have that voluntary departure period continue and then there would be an order of deportation. What he failed to tell Mr. Mendoza was that an H-1B employment visa petition is a non-immigrant visa petition and you have to be in status in order to avail of that visa petition. Mr. Mendoza had been in this country since 1990-91. He had been illegal during that for more than eight years. The Illegal Immigration Reform Act, Immigration Responsibility Act of 1996 imposed a three-year bar if you overstayed by more than six months and a ten-year bar if you overstayed by more than one year. What Mr. Mamarill failed to inform Mr. Mendoza is that if we file the visa petition for you and it's approved, you can't adjust your status here. You have to go back to the Philippines and wait ten years. And maybe if your employer is still interested in you after ten years, maybe you can get a visa petition to return to the U.S. That was never explained to him. What was explained to him was that what he was told is that this is your best course. You can still work out everything and everything will be best for you. Now, immigration clients are particularly vulnerable, more so than any other kind of clients except children and mentally disabled. They're almost entirely dependent on what their immigration attorneys advise them because they weren't born and raised here and generally not educated here and are unfamiliar with immigration law. So they were not familiar. He was not informed what the consequence would be of not filing the timely notice of appeal. In Flores, Ortega, the filing of such a notice, according to them, is a purely ministerial task that poses no burden on counsel. At the time of the hearing, when the decisions were rendered by the immigration judge on January 7, two copies are prepared by the immigration judge, one for the immigration attorney. There is no third paper that is given to the client. Everything is in the file. And when the immigration attorney announced to the court he was reserving appeal, that was telling the court he was going to file the notice of appeal within 30 days. That's why two days before the notice of appeal was due, that's why Mr. Mamarill called Mr. Mendoza to tell him, you know, instead of filing that notice of appeal, let's just file an H-1B visa petition for you instead. And Mr. Mendoza, who is not familiar with immigration law, said, all right, attorney, if that's what you think is best. It was only after he was informed, he learned, he realized, wait a minute, I would have to leave the country and stay 10 years out of the country because of the 10-year bar imposed by IRAIR? Then he filed the notice of appeal two or three days after. And then it was denied because it was not timely filed. But for the government to say, well, it was a practical choice, that was a Hobson's choice. It wasn't a practical choice because it was not an informed choice. There was gross misrepresentation. It was egregious, in fact, when Mr. Mamarill did not inform him of what the real choices were. Now, Mr. Orozco, let's assume we agree with you on that. In other words, that the attorney didn't do what he should have done. Then next, your client has to show up. Prejudice, right? Right. But Flores Ortega says that the denial of this mandates a presumption of prejudice. Well, if he had to make a showing of prejudice, though, what's the prejudice here? Well, the prejudice is that if, in fact, the visa petition was going to be filed and none was, then that could have been, he would have had at least the option to do that. There a responsible attorney should have filed the notice of appeal, which imposed no burden on him. He wasn't filing an appeal brief. That would have then given him the opportunity to say, well, now that the notice of appeal is filed, let's think about this more clearly. Are you prepared? Is the employer prepared to wait this time? Are you prepared to wait this time? Is there a possibility of applying for a waiver in order to be able to get below the three years or ten years? All of those should have been properly discussed instead of not providing him with the kind of information that immigration attorneys, responsible immigration attorneys should have done in order to have particularly vulnerable clients not placed at risk. Immigration clients very often are subjected to this because when they get deported, they can't complain. They can't file appeals. They can't say, you know, what the attorney told me was wrong. That's why immigration attorneys have a great responsibility to make sure that they give them the right information. And when a decision is made, it's based on knowing all the facts before them. But does your client contend that he had a meritorious appeal? Yes, Your Honor. He believes, and that's why he had applied for the suspension. He believed that he had accumulated the seven years. He had been here since 1991. There was a question or still is a question about exactly what the lines are. He certainly believed he had an asylum, a meritorious asylum application. And Mr. Mamaril believed he had a meritorious basis. That's why the asylum was pursued and testimony was taken regarding the asylum application. And certainly there would have been a basis for withholding of deportation as a defense. So all of those were done. And all it would have taken, two days before the notice of appeal was due, is to file the notice of appeal. It is not, when the government says that Mendoza was aware insufficient time for Mendoza himself to pursue the timely appeal of his case, that's simply an error. There were two days remaining. It has to be received by the BIA. Mr. Orris, you're just repeating yourself. I think you're better off if you save your time for rebuttal. If it may please the Court, Anthony Payne on behalf of the United States Attorney General and John Ashcroft. Much of the argument that was just presented was not based on the facts of record. This Court's review, as it is well aware, is based on the administrative record. Mr. Mendoza's motion to reopen required him to show that the claim in effective assistance of counsel prevented his filing of a timely appeal. The Board of Immigration Appeals did not abuse its discretion by finding that Mr. Mendoza failed to carry that heavy burden of showing that attorney error caused the untimely filing. Well, he had just two days, and he had the advice of counsel that he shouldn't file one. Well, that is not correct, Your Honor. As an initial matter, there's the record does not compel that there was ever an agreement for his former counsel to file this appeal on his behalf. Now, there's a notice of appearance before the immigration judge for this attorney, but there is no notice of appearance before the Board. In this declaration, Mr. Mendoza does not state specifically that his former counsel agreed to file this notice of appeal for him. Furthermore, the evidence of record suggests that it was Mr. Mendoza's responsibility to file this notice of appeal, because after this conversation, two days before the filing deadline, it was five days later that Mr. Mendoza, who claimed that he was not aware of what an appeal meant, what the consequences were, filed a notice of appeal by sending it Federal Express. There's no explanation in the record why he did that, why just five days after this conversation, if he had an agreement with the attorney, that he sent the notice of appeal. The attorney called him, did he not? Well, it's not clear who called whom. From the declaration, he spoke with the attorney two days beforehand. So, after speaking with the attorney, his declaration was that he submits that. At that point, he threw up his hands. Well, he didn't throw up his hands. He agreed to let his attorney pursue the employment visa. But there's no explanation why, just five days later, Mr. Mendoza, pro se, without listing his former attorney as his counsel of record, would file an appeal with the Board of Immigration Appeals. That evidence shows that the record does not compel that there was ever agreement for an appeal to be filed. Given that, there cannot be an ineffective assistance of counsel claim. But even if there was an agreement, it was a tactical decision by his attorney. Well, how can it be a tactical decision? Well, the record does not show, nor does it make argument, that it was a wrong decision. Well, sure it was wrong. The board sort of said that, too. But counsel just said, wasn't necessary to take the appeal in order for the petitioner to maintain his eligibility for the visa? Well, it's a short... How can it be a tactical decision to, in effect, make your client ineligible for relief? Well, that's not necessarily true, Your Honor. It's my understanding that if he had obtained the visa during his voluntary departure period, and within 90 days, he could have moved to reopen with the immigration judge. And the reason why he would want to do that is because if he had applied, had filed a notice of appeal with the board, jurisdiction then would have been delayed with the board. So in order to reopen, he would have had to, one, file with the board, wait for the board to adjudicate that motion. The board does not affirmatively grant adjustment of status application. So the board would have then remanded to the immigration judge, who would have then placed it on his calendar and adjudicated the motion at that time. So by not filing the notice of appeal, you're eliminating the step of having to go to the board. Well, let's ask this question. What time did he have to move to reopen before the immigration judge? He had 90 days. And this was that? It was that. Well, it's not clear from the record when, if he was granted an employment visa. So we don't know from the record what happened. All we know is that... If you don't know, how can you say it was a tactical decision? Well, it's an option. The record does not compel that it was not a tactical decision. But he didn't support it. Well, it's not a... it's an abuse of discretion. The question is whether or not the board abused its discretion in finding that that was an option. And the record does not submit that it was not a tactical decision. So it was not an abuse of discretion. Well, let me try to get this straight. You're saying that he had an option to move to reopen before the IJ? Within 90 days. And was... Unless it became final. Yes, Your Honor. And how long did he have to appeal to the BIA? Thirty days after the IJ's decision. And the IJ's decision did not become final until his notice of appeal was not filed. Did he ever file for a reopening before the IJ? It's not clear from this record, Your Honor. So, based on the record before the board, we do not know. He didn't, did he? I do not know, Your Honor. Mr. Payne, I'm a little puzzled. I'm not quite sure I understand the government's position. The BIA characterizes the decision as a strategical one. Yes. And your position is that there is no demonstration that it was an abuse of discretion on the part of the BIA to so characterize the decision? Yes, Your Honor. And that's because we have no information one way or another as to what the BIA had in mind in calling it a strategical decision? Well, the alien carried the heavy burden of showing that this was ineffective assistance of counsel. The Supreme Court has said in a motion to reopen case, the alien carries the heavy burden. The BIA is operating solely off of the administrative record. The administrative record in this case does not speak to whether or not it was ineffective assistance of counsel or a strategical decision. Now, the BIA reached a conclusion eventually that it was a strategical decision, and the record does not compel a different finding. You say it reached that conclusion because it used that adjective. Yes. And then we wonder, what did the BIA mean by that? As in, I'm not sure if I understand your question, Your Honor. We look in the record to find some support for the adjective strategical? Yes. The court looks into the record to find if it was an abuse of discretion, whether or not it was a strategical decision. And for the reasons set forth, it's the government's position that it was a strategical decision. Because, once again, by not filing a notice of appeal, you take away the step of having to move to reopen with the board, which, frankly, Your Honor, can take some time to adjudicate a case. And given the fact that they had 90 days to file a motion to reopen, and the voluntary departure period was going to expire in December, that's a rational choice. That's a strategic choice. It's certainly not an ineffective choice. And that's a narrative that we should retrospectively attribute to the attorney? Yes. In review of the record, the government submits that that position is supported. Now, counsel gave advice which was erroneous. He said, well, go ahead and seek a work visa. But he couldn't do that if he didn't file a notice of appeal. Is that correct? That's not true, Your Honor. I believe he could still the obtaining a visa is not dependent on whether or not you are in proceedings. He can obtain a visa. Adjusting status at that point would depend whether or not you have a final deportation order. For 90 days after that decision, there was no final deportation order. So during that period of time, Mr. Mendoza could have moved to reopen once he obtained a visa. That is the government's understanding. That he could have obtained a visa without being in status by filing a notice of appeal? Yes, Your Honor. That's the government's understanding. Well, is the government's understanding correct under the law? I believe so, Your Honor. Thank you. The government submits. Thank you. All right. Rebuttal? Well, I think, at least for me, Mr. Payne has explained another option, right, and why it wasn't necessary to file a notice of appeal. What's your reaction to that? Your Honor, first of all, it's a wrong statement of the law that was presented. If it was an approved immigrant visa petition, then you can file a motion to remand the case back to the immigration court. This was an H-1B visa petition, a non-immigrant visa petition. The requirements of ERA ERA 1996 requires that you must be in status in order to apply for a non-immigrant visa petition such as this. So he was not eligible for it because he had been out of status for at least eight years, and at that point more than ten years. So he was clearly not eligible. There was no basis for a motion to remand, so that is clearly a misstatement of the law. And so and then the other point I'd like to just say is that the record is clear in the declaration of Mr. Mendoza that two days before the deadline, Mr. Mamarill called me up and advised me that he would submit my employer's petition. So it was not a matter of who called up or that being confusing. It was clear this was Mr. Mamarill two days before he knew the deadline was up, and he had the notice of the decision of the court. Okay. Thank you. Again, we thank both counsel. This case is submitted for decision. Next case is...
judges: B Fletcher, Tashima, Pollak